<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CHARLES GOODINSON,<br><br>Plaintiff,<br><br>v.<br><br>JOHNSON & JOHNSON, *et. al.*<br><br>Defendants. | Civil Action No. 22-1320 (ZNQ) (TJB)<br><br>**CONSOLIDATED OPINION** |

<u>**QURAISHI, District Judge**</u>

**THIS MATTER** comes before this Court on thirty-three Motions for Remand (the "Motions") filed by separate plaintiffs who have alleged various injuries as a result of being implanted with a Pinnacle Acetabular Cup System. The Court observed these Motions on its docket and requested that counsel[1] confer and propose means to consolidate them to facilitate their disposition. In response, the parties supplied a proposed order (ECF No. 11), which the Court entered as an Order of Consolidation for Remand Purposes Only (the "Consolidation Order", ECF No.12). Consistent with parties' request in the Consolidation Order, the Court has considered the briefing they filed regarding remand in *Kissel v. Johnson & Johnson, et al.*, Civil Action No. 3:22-cv-2651. (Consolidation Order ¶ 4). There, Plaintiff William Kissel ("Plaintiff") filed a brief in

---

[1] To date, Plaintiffs in all of the cases before the Court are represented by a single law firm: Wilentz, Goldman & Spitzer, PA.

1

support of his Cross-Motion[2] for Remand ("Moving Br.", ECF No. 4), and Defendants Medical Device Business Services, Inc. and DePuy Synthes Sales, Inc. (collectively, "Removing Defendants") filed a brief in opposition. ("Opp'n Br.", ECF No. 6.) Having reviewed the parties' submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b), for the reasons set forth below and for good cause shown, Plaintiff's Motion for Remand will be GRANTED, as will the Motions for Remand filed by the other similarly situated plaintiffs.

I.   **BACKGROUND AND PROCEDURAL HISTORY**

On April 5, 2022, Plaintiff filed a Complaint ("Compl.") in the Superior Court of New Jersey, Middlesex County, claiming damages under New Jersey's Products Liability Act ("NJPLA"), against four Defendants: Johnson & Johnson, Johnson & Johnson Services, Inc., Medical Device Business Services, Inc., and DePuy Synthes Sales. (*See* Compl. ECF No. 1-1.)

Defendants Medical Device Business Services Inc., and DePuy Synthes Sales, Inc. removed this matter on May 5, 2022. (*See* ECF No. 1.) Removing Defendants attached a Declaration of Douglas K. Chia with its Notice of Removal. ("Chia Decl.", ECF No. 1-2.)

The Complaint sets forth the following relevant facts. Plaintiff was a resident of Colorado. (Compl. ¶ 1.) Defendant Johnson & Johnson is the parent company of Defendant Johnson & Johnson Services, Inc. (*Id*. ¶ 2.) Defendants Johnson & Johnson and Johnson & Johnson Services,

---

[2] The Motion for Remand in *Kissel*, like many but not all of the other thirty-two cases, was filed as a cross-motion to Defendants' Motion to Stay the cases pending their transfer to MDL 2244 in the Northern District of Texas. MDL 2244 was established in 2011 and, while it has not yet closed as of the most recent JPML Report entered on November 15, 2022, the JPML has nevertheless denied transferring *Goodinson* and other more recent would-be member cases on the basis that the MDL has reached the point where the benefits of such a transfer are outweighed by the effects of adding new cases. *See* Order Vacating Conditional Transfer Orders (3:22-cv-1320 ECF No. 7 at 2). Accordingly, Defendants have since withdrawn the Motions to Stay they filed in each of the remaining cases before the Court (ECF No. 15.), leaving pending only the Motions for Remand.

Inc. ("collectively, Johnson & Johnson Defendants") are citizens of the State of New Jersey. (*Id.* ¶¶ 2, 3.) Removing Defendants are citizens of Indiana and Massachusetts. (*Id.* ¶¶ 4, 5.)

The Complaint alleges that Defendant Johnson & Johnson participated "in developing the product, greenlighted its sale worldwide, held the product out as its own, independently promoted the product, exercised ultimate controlling authority over the product's design and promotion, sold the product and derived revenue from its sale such that it is the responsible authority over the research, development, testing, manufacture, production, marketing, promotion, distribution and/or sale of the product at issue in this litigation, known as the DePuy Pinnacle MoM hip replacement system." (*Id.* ¶ 7.) The alleged defective product, the DePuy Pinnacle MOM hip replacement system, will hereinafter be referred to as "the Product."

The Notice of Removal alleges that while Defendants Johnson & Johnson and Johnson & Johnson Services, Inc. (collectively, "J&J Defendants") are in-state defendants, removal was nevertheless proper because J&J Defendants' were fraudulently joined and their citizenship should therefore be ignored. (NOR ¶ 13.)

## II.         LEGAL STANDARD

The "forum defendant rule" provides that a "civil action otherwise removable solely on the basis of [diversity jurisdiction] may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which the action is brought." 28 U.S.C. § 1441(b)(2). Under the doctrine of fraudulent joinder, however, a defendant may still remove a non-diverse case if it can establish that all in-state defendants were sued solely to prevent removal to federal court. *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921); *Chesapeake & Ohio Railway v. Cockrell*, 232 U.S. 146, 147 (1914) (If fraudulent joinder is found, the citizenship of that defendant may be ignored and the action may be removed).

3

Notably, in this context the term "fraudulent joinder" does not require a showing of fraud in the conventional sense; "it in no way reflects on the integrity of plaintiff or of plaintiff's counsel." *Newman v. Forward Lands, Inc.*, 418 F. Supp. 134, 136 n.1 (E.D. Pa. 1976). The Third Circuit has specifically instructed "that joinder is fraudulent where 'there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment.'" *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990) (quoting *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 32 (3d Cir. 1985)); *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 852 (3d Cir. 1992) (describing a claim as not colorable if it is "wholly insubstantial and frivolous"). Accordingly, a court's determination of fraudulent joinder does not focus on whether a plaintiff's claims are "plausible" under *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) or Rule 12(b)(6), rather it focuses on whether they are more than "frivolous." *In re Briscoe*, 448 F.3d at 218; *Batoff*, 977 F.2d at 852. Importantly, "it is possible that a party is not fraudulently joined, but that the claim against that party ultimately is dismissed for failure to state a claim upon which relief may be granted." *In re Briscoe*, 448 F.3d 201, 218 (3d Cir. 2006) (quoting *Batoff*, 977 F.2d at 852).

Where fraudulent joinder is alleged, the defendants bear a heavy burden to demonstrate the "fraud" and the existence of federal jurisdiction. *Id.* "[I]f there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court. *Hannah v. Johnson & Johnson Inc.*, Civ. No. 18-1422, 2020 WL 3497010, at *8 (D.N.J. June 29, 2020) (quoting *In re Briscoe*, 448 F. 3d at 217) (internal quotation marks and citation omitted). In addition, fraudulent joinder must be established by clear and convincing evidence. *American Dredging Co. v. Atlantic Sea Con, Ltd.*, 637 F. Supp. 179, 183 (1986) (citing *Nobers v. Crucible*,

4

*Inc.*, 602 F. Supp. 703, 705–06 (W.D. Pa. 1985). Thus, unless Removing Defendants can show by clear and convincing evidence that there is no possible basis for imposing liability on the New Jersey Defendants under the applicable state law and the facts alleged, this action must be remanded to state court.

With the foregoing legal principles in mind, the Court now turns to an evaluation of the arguments advanced by the parties.

### III. <u>DISCUSSION</u>

#### A. Whether New Jersey Law Applies

First, Removing Defendants assert in their Notice of Removal that there is no reasonable basis for Plaintiff's claims against the New Jersey Defendants. (NOR ¶ 15.) Removing Defendants also assert that Plaintiff was a Colorado resident and received his hip implant in the State of Colorado and therefore Colorado law applies. (*Id.* ¶ 17.)

Plaintiff rejects the proposed application of Colorado law as a red herring. (Moving Br. at 12.) He asserts that his Complaint has alleged that New Jersey law applies and the fraudulent joinder analysis to be undertaken in this matter should likewise assume that New Jersey law applies. (*Id.*)

In their opposition brief, Removing Defendants argue that it makes no difference for the purpose of Plaintiff's motion whether New Jersey or Colorado law applies because, under either state law, Plaintiff fails to plead a colorable claim. (Opp'n Br. at 5.) The law of both New Jersey and Colorado require that each of the New Jersey Defendants be a seller or manufacturer for liability to attach under Plaintiff's causes of action. (*Id.* at 6.)

Generally, a federal court sitting in diversity must decide which state's laws to apply to the claims raised in the action. *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 226 (3d Cir. 2007). "A federal court cannot engage in a choice of law analysis where diversity jurisdiction is not first

established," precluding a court from performing a choice of law analysis at the fraudulent joinder stage so long as the plaintiff's proffered choice of law is colorable. *Abels*, 770 F.2d at 32–33 & n. 10.

New Jersey choice of law rules apply where New Jersey is the forum for the litigation. *Erny v. Estate of Merola*, 171 N.J. 86, 94 (2002) (citing *Fu v. Fu*, 160 N.J. 108, 117–118 (1999)). New Jersey rules "employ a flexible governmental-interest analysis to determine which state has the greatest interest in governing the specific issue that arises in the underlying litigation." *Erny*, 171 N.J. at 94. New Jersey employs an issue-by-issue approach to a choice of law analysis and "recommends that each issue be decided by 'the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties.'" *Id*. at 95 (quoting Restatement (Second) of Conflict of Laws § 145(1) (1971)).

As set forth above, Plaintiff suggests that New Jersey law applies to his claims against New Jersey Defendants. (*See* Moving Br. at 12.) This choice of law appears colorable under the "significant relationship" test employed by New Jersey courts, which this Court is also obligated to apply. *See Hammersmith*, 480 F.3d at 226–231; *LeJeune v. Bliss–Salem, Inc.*, 85 F.3d 1069, 1071 (3d Cir.1996). New Jersey Defendants are New Jersey citizens. (*See* Compl. ¶¶ 2, 3.) The Court finds New Jersey had a substantial relationship with the parties and will, therefore, analyze whether Plaintiff's claims against New Jersey Defendants are themselves colorable under New Jersey law.

**B.  Whether the Court Will Consider Removing Defendants' Sworn Affidavits**

Plaintiff argues that all Removing Defendants' arguments require the Court to make a determination on the merits, which is outside the scope of a fraudulent joinder analysis. (Moving Br. at 12.) Plaintiff asserts that the Declaration of Douglas K. Chia (ECF No. 1-2) "in no way conclusively establishes, as a matter of fact or law, that Plaintiff's Complaint is wholly

6

insubstantial or frivolous." (*Id*. at 13.) At best, Plaintiff argues, the Chia Declaration sets forth issues of fact that are in dispute and which must be resolved in favor of Plaintiff and in favor of remand. (*Id*.) In particular, Plaintiff asserts that the Declaration raises issues more appropriately brought as an affirmative defense. (*Id*. at 14.)

In opposition, Defendants cite authority in support of the notion that there is no reason to preclude a district court from a limited consideration of reliable evidence that a defendant may proffer in support of the removal. (Opp'n Br. at 8) (citing to *Perez v. Penske Logistics, LLC*, Civ. No. 20-5591, 2021 WL 3661017, at *3, *6–7 (E.D. Pa. Aug. 17, 2021)).

Generally, a court may "look to more than just the pleading allegations to identify indicia of fraudulent joinder." *In re Briscoe*, 448 F.3d at 219; *see also Abels,* 770 F.2d at 29. When conducting a jurisdictional analysis, there is "no reason to preclude a district court from a limited consideration of reliable evidence that the defendant may proffer to support the removal." *In re Briscoe*, 448 F.3d at 220. "Such evidence may be found in the recording from prior proceedings . . . or in other relevant matters that are properly subject to judicial notice." *Id*. Courts in this circuit have looked to affidavits discussing a party's involvement in the case to determine whether it was fraudulently joined. *See, e.g., Weaver v. Conrail, Inc.*, Civ. No. 09-5592, 2010 WL 2773382, at *7, *9 (E.D. Pa. July 13, 2010) (holding that, under *In re Briscoe*, the court could properly consider an affidavit stating that certain defendants had absolutely no control or right to say how particular trains were run at the time of plaintiff's accident). In conducting its analysis, the Court must accept as true all factual allegations of the Complaint and must "resolve any uncertainties as to the current state of controlling substantive law in favor of the plaintiff." *Batoff*, 977 F.2d at 851–52.

A court may not look beyond the Complaint, however, if doing so would turn the threshold jurisdictional issue into a decision on the merits. *In re Briscoe*, 448 F.3d at 219 (quoting *Boyer*,

7

913 F.2d at 112); *see also Abbedutto v. Johnson & Johnson*, Civ. No. 17-5812, 2019 WL 3245106, at *4, n.4 (July 19, 2019 D.N.J.) (declining to consider the defendant's purported evidence, and held that the evidence, at best, disputed plaintiffs' allegations of knowledge.

A review of the Chia Declaration reveals that it merely disputes Plaintiff's allegations of J&J Defendants' involvement in the production, sale, design, and marketing of the allegedly defective product. Accordingly, it would be improper for the Court to resolve such a factual dispute on the merits at this jurisdictional stage. Therefore, the Court will look no further than the Complaint to determine the viability of Removing Defendants' fraudulent joinder claim.

### C. Whether Plaintiff's Claims against New Jersey Defendants are Colorable Under New Jersey Law

Removing Defendants contend that there is no reasonable basis to support Plaintiff's claims for violations of the NJPLA and breach of express warranty against J&J Defendants. (NOR ¶¶ 14, 18, 20; Opp'n Br. at 5.) Accordingly, Removing Defendants assert J&J Defendants were fraudulently joined and therefore, their citizenship may be ignored for purposes of removal. (*See* NOR ¶¶ 19, 36; Opp'n Br. at 5.) Plaintiff asserts that his Complaint is "replete with allegations of how [J&J Defendants] participated in and controlled the design, manufacture, marketing, distribution, and sale of the Pinnacle product. (Moving Br. at 15.) Accordingly, Plaintiff maintains that J&J Defendants are not fraudulently joined. (*Id*. at 22.)

With respect to Plaintiff's NJPLA claim against J&J Defendants, the Court concludes for the reasons set forth below, that Removing Defendants have failed to establish fraudulent joinder under the stringent standard imposed.

To determine whether J&J Defendants were fraudulently joined, this Court must determine whether Plaintiff has a reasonable basis in fact or colorable ground supporting NJPLA claim brought against J&J Defendants. *See Boyer*, 913 F.2d at 111. Under NJPLA, the standard for

8

liability is that the product was not reasonably fit, suitable, or safe for its intended purpose. N.J.S.A. § 2A:58C-2. To establish a manufacturing defect claim under NJPLA, Plaintiff must prove that product was defective, that the defect existed when the product left manufacturer's control, and that the defect proximately caused injuries to him, a reasonably foreseeable or intended user. *Id*. To establish a design defect claim, Plaintiff must demonstrate the product was manufactured as intended, but that its design rendered it unsafe. *Id*.

Removing Defendants urge that Plaintiff's NJPLA claims would fail because J&J Defendants did not manufacture or sell hip implants.[3] (NOR ¶ 18.) A review of the Complaint, however, reveals otherwise. The Complaint specifically pleads that J&J Defendants, "directly and/or through the actions of its subsidiaries . . . participated in developing the product . . . [and] sold the product." (Compl. ¶ 7.) Further, the Complaint pleads colorable claims under the NJPLA against J&J Defendants. Specifically, the Complaint pleads that at the time J&J Defendants "designed, manufactured, promoted, marketed, sold, supplied, distributed and serviced the Pinnacle hip system implanted in Plaintiff, the [Product] contained defects that made it unreasonably dangerous beyond the expectations of the ordinary customer, and was unfit for its intended use." (Compl. ¶ 129.) Accordingly, the Court finds that the Complaint pleads a colorable NJPLA claim against J&J Defendants.[4]

Given that Plaintiff's Complaint contains at least one colorable claim against J&J Defendants, the Court finds that Removing Defendants' fraudulent joinder argument fails.[5]

---

[3] Removing Defendants first assert that Plaintiff's claims under the NJPLA must fail because Colorado Law applies. (See NOR ¶ 16.) The Court has already determined that a choice of law analysis is not ripe at this stage and therefore disregards this argument.

[4] While the Court finds Plaintiff has pled a colorable claim against J&J Defendants, it makes no determination as to whether such a claim will survive a 12(b)(6) motion.

[5] The Court also notes that, as Plaintiff points out, in March of 2016, a Texas jury found Johnson & Johnson liable for injuries to the plaintiffs because it was engaged in the business of selling and designing the Product, and negligently provided services to and knowingly assisted the tortious conduct of DePuy Orthopaedics, Inc. (*See* Moving Br. at 16, Ex. E.)

Accordingly, the Court concludes that J&J Defendants were properly joined and that the forum defendant rule therefore precludes removal of this action.

## IV.     CONCLUSION

For the reasons set forth above, the Court concludes that Plaintiff's Motion to Remand this case to the Superior Court of New Jersey must be granted. For the same reasons, the Court also concludes the other Motions for Remand filed by similarly situated Plaintiffs must likewise be granted. An appropriate order will follow.

Date: November 29, 2022

                                                s/ Zahid N. Quraishi
                                                **ZAHID N. QURAISHI**
                                                **UNITED STATES DISTRICT JUDGE**